IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Joshua A. Glidewell,<br>Randy A. Bryson,<br>      Plaintiffs,<br><br>vs.<br><br>City of Greenville,<br>      Defendant. | Civil Action No. 6:09-1932-JMC<br><br>**REPORT AND RECOMMENDATION** |

This matter comes before the undersigned for a Report and Recommendation on the plaintiffs' motion for award of attorney's fees and costs[1] in the amount of $224,806.71, pursuant to Title 42, United States Code, Section 1988, the South Carolina Religious Freedom Act (S.C. Code Ann. § 1-32-10 *et seq.*), and Federal Rule of Civil Procedure 54. All other issues in the case have been resolved by way of a consent decree entered by the Honorable J. Michelle Childs, United States District Judge, on October 14, 2010. After entry of the consent decree, the parties jointly moved for extensions of time in which to negotiate or file for attorney's fees and costs. The plaintiffs then filed their motion on May 18, 2011, along with a bill of costs. The defendant filed responses in opposition to both on June 6 and 20, respectively, and the plaintiff filed a reply on June 30. Judge Childs thereafter referred the matter to the undersigned. On December 5, 2011, the plaintiffs filed a supplemental declaration of attorney Frederick N. Nelson in support of the motion for award of attorney's fees and costs. A hearing before the undersigned was held on December 7. After arguments were presented at the hearing, the undersigned urged the

---

[1]While the parties consented to this court hearing the motion, a Report and Recommendation is appropriate pursuant to *In Re: Orders of Reference to Magistrate Judges*, 3:03-mc-05008-civ (stating that matters involving attorney fee petitions in cases that Magistrate Judges did not try or hear are not to be referred to Magistrate Judges).

parties to attempt another effort to settle the matter and to report back to the court. By the end of December, the parties advised that the matter had not settled.

## **FACTUAL AND PROCEDURAL BACKGROUND**

The underlying case involves confrontations between the plaintiffs, who were then preaching on the public sidewalks of downtown Greenville, South Carolina, and Greenville City Police officers. Per the defendant, officers arrested plaintiff Glidewell and another individual, Joseph Bane, in September 2007 after they reportedly singled out two women and addressed them in a confrontational manner. Glidewell and Bane were each cited for violating Greenville City Code § 24-32, Molesting, Disturbing, and Following Persons. The ordinance contained five subparts, including subpart (3), which made it unlawful for any person to "molest or disturb any person by the making of obscene remarks or such remarks and actions as would humiliate, insult, or scare any person." Glidewell was later acquitted for lack of evidence, while Bane's conviction was ultimately reversed by the South Carolina Supreme Court, which held § 24-32(3) to be unconstitutionally vague on its face. Approximately one month after Glidewell's arrest, plaintiff Bryson was allegedly prevented by city police from preaching and distributing religious literature on a public sidewalk in downtown Greenville.

Glidewell filed his complaint here in July 2009, alleging the city violated his constitutional freedoms and civil rights and seeking damages and injunctive relief, as well as attorney's fees and costs. An amended complaint was filed in March 2010, adding Bryson as a plaintiff. In June 2010, a hearing was held before the previously-assigned United States District Judge, the Honorable R. Bryan Harwell, on the plaintiffs' motion for a preliminary injunction to enjoin the city from enforcing § 24-32(3). Judge Harwell took the matter under advisement, and before he issued his ruling, the parties notified the court that § 24-32(3) had been repealed by city council (doc. 64). Thereafter, the parties entered into the aforementioned consent decree (doc. 71), which provided in pertinent part for payment

2

of $2,500 from the defendant to Glidewell and the assurance from the city that the plaintiffs' street-preaching would not be stifled so long as they abided by the law, including the remaining sub-parts of § 24-32 relating to disturbing the peace. As set out above, the matter of plaintiffs' attorney's fees and costs was left for future negotiation and court resolution.

## APPLICABLE LAW AND ANALYSIS

The Civil Rights Attorney's Fees Awards Act of 1976, as amended, 42 U.S.C. § 1988, provides in relevant part:

> In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92-318 ..., or title VI of the Civil Rights Act of 1964 ..., the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

42 U.S.C. § 1988. The Fourth Circuit Court of Appeals has stated:

> It is now axiomatic that plaintiffs who prevail in actions brought under section 1983 are entitled to attorney's fees unless special circumstances would render such an award unjust, and the discretion of a district court in deciding whether to award such fees to a prevailing party is narrowly limited.

*Consumers Union of United States, Inc. v. Virginia State Bar*, 688 F.2d 218, 222 (4th Cir. 1982) (citing *Bonnes v. Long*, 599 F.2d 1316 (4th Cir. 1979)). "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). In addition, Section 1983 plaintiffs are entitled to recover reasonable court costs and expenses related to successful litigation. *Daly v. Hill*, 790 F.2d 1071, 1084 (4th Cir. 1986) (entitling a prevailing plaintiff to reasonable

3

out-of-pocket expenses incurred by the attorney that are normally charged to a fee-paying client).[2]

***Prevailing Party***

The plaintiffs contend they are statutorily entitled to attorney's fees and costs because they are the prevailing party, having obtained all the relief they sought. The defendant disagrees and argues that the plaintiffs actually did not obtain anything more via the consent decree than a token payment and an affirmation of the rights they already had: the right to preach in public and disburse religious literature, mindful of city law. The court sides with the plaintiffs on this issue and recommends that <u>reasonable</u> attorney's fees and costs be paid by the defendant. "[A] plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992). The plaintiffs' suit undoubtedly resulted in city council repealing sub-part (3) of § 24-32 while Judge Harwell had the plaintiffs' motion for injunctive relief under advisement. The consent decree permanently prevents the defendant's enforcement of § 24-32(1) against the plaintiffs absent a breach of peace. Moreover, while the $2,500 payment to Glidewell is considered by the defendant to be only a "nuisance settlement," the

---

[2]The court in *Daly* also discussed the difference between the scope of costs taxable under Federal Rule of Civil Procedure 54(d) and 28 U.S.C. § 1920 and under § 1988. The court stated:

> [The difference in scope] is due to the fact that these two bodies of law ... are grounded in antithetical policies. Rule 54(d) and § 1920 are premised on the traditional "American Rule" that each party to a lawsuit bear its own costs. Section 1988 was intended as an exception to the American Rule and is premised on the idea of fee shifting. Because meritorious civil rights plaintiffs are "private attorneys general" enforcing important congressional policies, § 1988 is intended to encourage them to bring suit by shifting the costs of litigation to defendants who have been found to be wrongdoers. In keeping with the fee shifting policy behind § 1988, numerous courts have found litigation expenses to be compensable under the statute.

*Daly*, 790 F.2d 1071, 1083-84.

4

amount is not deemed insignificant by this court: Glidewell was arrested and jailed for violating a patently unconstitutional ordinance (for which he was acquitted), and the payment here appears to be a fair, albeit relatively low, sum to resolve his damages. Furthermore, the consent decree specifically provides as follows, in pertinent part:

> The Defendant, City of Greenville, and the Plaintiffs' counsel will attempt to informally negotiate, without the assistance of further mediation, an acceptable amount of the Plaintiffs' counsels' attorneys' fees and costs. In the event the Defendant, City of Greenville, and the Plaintiffs' counsel are unable to agree upon an acceptable amount, they shall jointly move the Court to intervene in the form of a hearing limited solely to a determination of the acceptable amount of attorneys' fees and costs.

(Consent decree at 6-7, doc. 71). This paragraph indicates to the court that the defendant recognized and anticipated that the plaintiffs would be entitled to "an acceptable amount" of attorney's fees and costs as a result of resolving the case via the consent decree. As such, the defendant then considered the plaintiffs to be the prevailing parties, and to argue to the contrary now is an unacceptable shift. Based upon the foregoing, this court finds that the plaintiffs are the prevailing parties in the instant action.

*Attorney's Fees and Costs*

The plaintiffs were represented in this case by attorneys Frederick H. Nelson ("Nelson") and Nicole C. Myers ("Myers") of the American Liberties Institute (collectively, "American Liberties Counsel"), a nationwide public interest law firm specializing in constitutional rights and religious liberties, and local counsel Samuel D. Harms ("Harms") of the Harms Law Firm. Also working on the case were American Liberties' paralegal Satu E. Nelson ("Paralegal Nelson") and the Harms Law Firm's paralegals, Justin R. Alexander and Cheryl Wynn ("Paralegals Alexander and Wynn"). American Liberties Counsel seeks

5

an award of $131,760.00 [3] in attorney's fees incurred for work performed prior to any work related to the instant motion ("litigation phase") and $2,762.61 in costs[4] (pl. m. atty. fees at 3, doc. 93). In addition, American Liberties Counsel seeks an award of $8,158.50 in attorney's fees for 25.9 hours of work and $343.20 in costs for work performed in connection with the instant motion ("fees phase") (*see* Nelson supp. decl., doc. 114). Harms seeks attorney's fees for work related to the litigation phase in the amount of $71,419.00 [5] (pl. m. atty. fees at 3, doc. 93). He also seeks $5,805.00 in attorney's fees for 25.8 hours of work performed in the fees phase (*see* pl. reply at 14, ex. A, doc. 101-1).

"In calculating an award of attorney's fees, a court should determine a lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." *Brodziak v. Runyon*, 145 F.3d 194, 196 (4th Cir.1998) (internal quotation marks omitted). In deciding what constitutes a reasonable number of hours and rate, the district court generally is guided by the following particular factors:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

---

[3] American Liberties Counsel reduced the total request of $146,399.00 by 10% to show "good faith in billing judgment" (pl. m. atty. fees at 3, doc. 93).

[4] This amount is separate from the from the bill of costs.

[5] Harms reduced his total request of $79,354 by 10% to show "good faith in billing judgment." As the American Liberties Institute paid all the costs in this action, Mr. Harms has no additional costs (pl. m. atty. fees at 3, doc. 93).

6

*Id*. (internal quotation marks omitted); *see also Daly v. Hill*, 790 F.2d 1071, 1078 (4th Cir.1986) (applying factors to a claim for attorney's fees pursuant to 42 U.S.C. § 1988 and noting that the factors are appropriately considered in initially determining the lodestar figure, not in adjusting the figure upward). "A proper computation of the lodestar fee will, in the great majority of cases, constitute the 'reasonable fee' contemplated by § 1988." *Daly*, 790 F.2d at 1078. Accordingly, the court will consider the above factors as appropriate and relevant in determining the fee in this case.

American Liberties Counsel claims to have expended a total of 460.7 hours in the litigation phase of the instant case. The time is allocated as follows: Attorney Nelson expended 326.8 hours; Attorney Myers expended 124.8 hours; and Paralegal Nelson expended 9.1 hours (pl. m. atty. fees. at 3, doc. 93). American Liberties Counsel contends that the following rates are reasonable hourly rates for each respective professional who performed work in the instant case: Nelson, $350; Myers, $250; and Paralegal Nelson $90 (*id.*). In addition, Harms expended 299.2 hours, and Paralegals Alexander and Wynn expended 50.6 hours in the litigation phase. Harms contends that $250 per hour is a reasonable rate for his time and that his paralegals' hourly rate is $90 (*id.*). Therefore, the plaintiffs' attorneys claim that the reasonable time expended performing legal services in connection with the litigation phase of the instant case totals 810.5 hours, and they seek to recover $225,753.00 in attorney's fees as a result of that work. The plaintiffs' attorneys state that they have "exercised good faith in billing judgment to additionally reduce the attorney's fees request by 10% to total $203,179.00" (*id.*).

*A. Hours*

Initially, the court is required to calculate the number of hours reasonably expended by the plaintiffs' attorneys. In making this determination, "the court should not simply accept as reasonable the number of hours reported by counsel." *Espinoza v. Hillwood Square Mut. Ass'n*, 532 F.Supp. 440, 446 (E.D.Va.1982). Further, "duplicative,

excessive, or redundant hours should not be compensated under § 1988." *Trimper v. City of Norfolk, Virginia*, 58 F.3d 68, 76 (4th Cir.1995). In the instant case, a total of three attorneys and three paralegals expended 810.5 hours in the litigation phase of this case and 51.7 hours in the fees phase. In addition, attorneys from two law firms performed work on behalf of the plaintiffs.

First, the court finds the level of complexity of the instant case did not demand the work of two attorneys from American Liberties Institute. While the court appreciates Nelson's argument that it was more efficient to use Myers as her per hour rate is less than his, the court finds that the additional 124.8 hours attributable to Myers were unnecessary and excessive given Nelson's presence in the case. Therefore, the court will not award attorney's fees for the hours expended by Myers. *See Trimper v. City of Norfolk, Virginia,* 58 F.3d at 76-77 ("Properly reducing allowable hours because of overstaffing of attorneys is not an abuse of discretion, and indeed falls soundly within the district court's proper discretion in determining an attorney's fee award.").

Second, the court finds that the total number of hours claimed by the plaintiffs' attorneys represents a great deal of "duplicative, excessive, and redundant hours." *Id*. at 76. The instant case did not demand complicated discovery or legal briefing so as to justify the extremely high number of hours expended by the plaintiffs' attorneys. Further, while the court finds that it was proper for the plaintiffs to employ American Liberties Counsel in addition to Harms as local counsel, the high number of hours claimed as well as the high level of preparation and competence claimed by both firms leads the court to find the existence of a duplication of efforts. *See Espinoza*, 532 F.Supp. at 446 ("When several firms are involved, the issue of duplication can be especially difficult.") (citation omitted).

The time records submitted by American Liberties Counsel and Harms support a finding of a great deal of duplication of efforts. Approximately 95 hours in attorney time by American Liberties Counsel and 37 hours by Harms were expended prior

8

to the filing of the complaint. As pointed out by the defendant, this pre-filing activity would have produced a bill to plaintiff Glidewell (the only plaintiff at that time) in excess of $30,000.00 for pre-filing activity, which is clearly excessive. *See Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983) ("hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority"). The pre-filing hours claimed by Harms begin in September 2007, nearly two years before the complaint in the instant action was filed. Harms claims he is entitled to attorney's fees for the time he spent representing plaintiff Glidewell in the underlying city court criminal action. Harms also includes in this time telephone calls to and from Joseph Bane, who is not a party to this action (*see* Harms decl., ex. A at 1-5, doc. 93-3). Harms also seeks two hours in attorney and paralegal time spent coordinating permission from a Greenville municipal judge for Bane to leave the country (*id.* at 2) along with over 20 hours for time he spent objecting to the defendant's notice to depose Bane in this matter (*id.* at 15-20). As Harms was acting in the capacity of Bane's attorney in those activities, and Bane is not a party to the complaint herein, it would be inappropriate for him to seek such fees in this matter. Likewise, he cannot claim fees for defending Glidewell in the criminal case, which was prior to the filing of the complaint in this case. This court finds that such fees are inappropriate here.

Furthermore, many of the hours of claimed by the plaintiffs' attorneys consist of communication between co-counsel, which this court finds excessive for communication between experienced First Amendment lawyers in a case such as this one. Also, Myers seeks a total of 27.5 hours for time spent preparing five deposition summaries, while Harms has claimed over 30 hours for the time to prepare for and attend depositions including those five. The time sought by Myers is clearly excessive as it amounts to more time than it took to take the original depositions. Furthermore, any needed deposition summaries could have been prepared by paralegals at a much lower rate. Plaintiffs' counsel also seek fees for approximately 3.4 hours for time spent interacting with local media (excluding hours

9

spent reviewing local media for jury issues), which this court finds inappropriate for recovery here.

Finally, the time sheets submitted by the plaintiffs' attorneys suggest an excessive amount of time spent on tasks. By way of example, when the complaint was amended to add Bryson as a plaintiff, 37 hours were expended in preparing the amended complaint, which consisted of only 11 additional sentences to the original complaint.

In general, the uncomplicated nature of the law and discovery in the instant case did not warrant the high number of hours expended by the plaintiffs' attorneys. The plaintiffs complain that the defendant's actions created avoidable discovery disputes in this case. However, such disputes were limited and required little activity in this court. The case was pending for only a little over a year, was settled by consent decree, and did not require a trial. The plaintiffs' attorneys are well-experienced in First Amendment cases and claim high-end fees for their services. However, "[t]he rationale for allowing high-end fees in civil rights cases is that attorneys with experience [and] skill in civil rights cases will be able to avoid excess time and research on the issues." *Trimper v. City of Norfolk, Virginia*, 846 F.Supp. 1295, 1306 (E.D. Va. 1994). Based on the foregoing, the court will reduce the hours claimed by the plaintiffs and finds that a total of 240 hours was a reasonable number of hours for the plaintiffs' attorneys to expend on the instant case. Further, the court finds that the hours expended by the paralegals were reasonable. Accordingly, the court will recommend that fees be awarded based on 9.1 hours expended by American Liberties Paralegal Nelson and 50.6 hours expended by the Harms Law Firm paralegals. Finally, the court finds that the costs of $2762.61 incurred by the plaintiffs during the litigation phase are reasonable and should be awarded to American Liberties Counsel.

*B. Rates*

The court finds that the rates proposed by the plaintiffs' attorneys are unreasonable in this market. First, "the law is clear that in seeking attorney's fees under

section 1988, attorneys are under a duty to minimize expenses." *Trimper,* 58 F.3d at 76. As stated above, a total of three attorneys, each claiming high rates, along with three paralegals, purportedly spent a total of 810.5 hours working on behalf of the plaintiffs. American Liberties Counsel contends that the high rates are justified because "lead counsel is a recognized national expert in civil rights cases ... [and] has trained teams of lawyers dedicated to religious liberties and civil rights . . . ." (pl. m. atty. fees at 27, doc. 93). Thus, American Liberties Counsel contends that "the requested rates are reasonable based on the experience, skill level and expertise of the counsel involved in the litigation of the case." (*id.*).

In his declaration, Harms states that on March 2, 2007, the Honorable Henry M. Herlong, Jr., now senior United States District Judge, held in the case of *Child Evangelism Fellowship of South Carolina vs. Anderson Sch. Dist. 5*, 8:04-cv-01866-HMH, 2007 WL 1302692 (D.S.C. 2007) that his requested rate of $225 per hour was reasonable and that, since that time, he has gained additional knowledge and experience in the area of constitutional law litigation, and he should therefore be awarded a higher hourly rate (Harms decl. ¶¶ 21-22, doc. 93-3). However, this court is of the opinion that the rate of $225 per hour is still a reasonable rate in this market and, particularly, in this economy.

The fifth *Brodziak* factor requires the court to consider the customary fee for like work, and the twelfth factor requires the court to consider attorney's fees awarded in similar cases. Plaintiffs' counsel cites a number of cases approving attorney's fees in excess of $300 per hour (pl. m. atty. fees at 28, doc. 93). However, none of the cases reflect the rate in the relevant market of the District of South Carolina. *See Trimper*, 58 F.3d at 76 ("[T]he proper measure of fees is the prevailing market rate in the relevant market ...."). In *Child Evangelism Fellowship*, a First Amendment case in which the plaintiff's attorneys sought attorney's fees and costs pursuant to 42 U.S.C. § 1988, Judge Herlong awarded an hourly rate of $275 to the lead counsel, who was nationally recognized

for his prominence as an attorney specializing in First Amendment law, like Nelson in this case. *See* 2007 WL 1302692, at *5. As noted above, Judge Herlong found that $225 per hour was a reasonable rate for Harms.

The sixth factor requires the court to consider the attorneys' expectations at the outset of the litigation. This case was not focused so much on monetary damages and a corresponding fee, but rather was primarily focused on injunctive relief. Accordingly, this factor does not impact the court's analysis. In addition, pursuant to the ninth factor, which considers the experience, reputation, and ability of the attorney, this court, as noted above, has taken into account the fact that the plaintiffs' attorneys, to varying degrees, are experienced in cases such as this, and that the lead counsel, Nelson, is nationally recognized for his prominence as an attorney specializing in, among other things, First Amendment law. Accordingly, this court has considered their reputation and experience in ascertaining a reasonable hourly rate.

The eighth factor of the results obtained is non-determinative; even though the plaintiffs were the prevailing parties, this court finds that the relief obtained via the consent decree was not so impressive as to command inflated attorney's fees.

The tenth factor, the "undesirability of the case within the legal community in which the suit arose," contemplates the difficulty a potential plaintiff might experience in securing effective area counsel given the nature of the case. On this issue, the plaintiffs have submitted the declaration of Greenville attorney James G. Carpenter, in which he opines that it would have been very difficult for the plaintiffs to have secured counsel, given the circumstances presented, in South Carolina (James G. Carpenter decl., doc. 93-5). However, at the December hearing, plaintiffs' counsel could not answer the court's inquiry as to whether the plaintiffs had in fact made such attempts within the state. While this court recognizes the fine abilities of Mr. Nelson and Mr. Harms, it is unconvinced that the South Carolina bar lacks other fine attorneys who would have provided excellent representation

12

if given the opportunity. Accordingly, the tenth factor counsels against an award of increased attorney's fees.

Based on the foregoing and taking into account the appropriate and relevant *Brodziak* factors, the court finds that the hourly rates requested by the plaintiffs' attorneys are excessive and unreasonable. Accordingly, the court finds that the rates used to calculate the fee award in the present case should be as follows: Nelson, $275 per hour, and Harms, $225 per hour. The court finds that the paralegal rate of $90 per hour is reasonable.[6]

For purposes of calculating the award of attorney's fees, and due to the varying rates attributed to each attorney, the court will attribute sixty percent of the 240 reasonable hours as found by this court to Nelson and forty percent of the 240 reasonable hours as found by this court to Harms.[7] This percentage reflects the proportionate contribution of American Liberties Counsel and Harms to the total work expended on behalf of the plaintiffs. Based on this apportionment and the reasonable rates and hours as found by this court, attorney's fees in the amount of $66,573.00[8] should be awarded to the plaintiffs for the litigation phase of the instant case. Of this amount, American Liberties Counsel should be awarded $40,419.00, and Harms should be awarded $26,154.00.

As noted above, American Liberties Counsel seeks $8,158.50 in attorney's fees resulting from 25.9 hours of work in the fees phase, and Harms seeks $5,805.00 in attorney's fees for 25.8 hours of work in the fees phase. "Time spent defending entitlement to attorney's fees is properly compensable in a § 1988 fee award." *Daly*, 790 F.2d 1071, 1080 (citing *Hymes v. Harnett Cnty. Bd. of Educ.*, 664 F.2d 410, 413 (4th Cir. 1981)). This

---

[6] Accordingly, multiplying the reasonable rate by the reasonable hours expended by American Liberties Paralegal Nelson ($90 x 9.1 hours) equals $819.00. Doing the same for Paralegals Wynn and Alexander of the Harms Law Firm ($90 x 50.6 hours) equals $4554.00.

[7] Sixty percent of 240 is 144, and forty percent of 240 is 96.

[8] This amount includes the fees for the paralegals for the firms as described above.

court finds this request to be unduly excessive. "The prevailing party should not be awarded the cost of seeking attorneys fees where it appears that plaintiff has not made sufficient effort to minimize the cost of seeking said fees." *Trimper*, 846 F.Supp. at 1308. Accordingly, American Liberties Counsel should be awarded $3,000 in attorney's fees and $343.20 in costs for the fees phase of the instant case, and Harms should be awarded $2,000.

*C. Bill of Costs*

The plaintiffs submitted a bill of costs totaling $4558.40 (doc. 94). The defendant objected to an award of costs based on the position that the plaintiffs were not the prevailing party but did not object to any of the costs listed on the invoice. The requested costs all appear to be appropriate under 28 U.S.C. § 1920, Federal Rule of Civil Procedure 54(d), and Local Civil Rule 54.03 DSC. Accordingly, the Clerk of Court should tax these costs to the defendant.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, this court recommends that the plaintiffs' motion for award of attorney's fees and costs (doc. 93) be granted in part. Based upon the apportionment and the reasonable rates and hours as found by this court, attorney's fees in the amount of $71,573.00 should be awarded to the plaintiffs. Of this amount, American Liberties Counsel should be awarded $43,419.00 and Harms should be awarded $28,154.00, reflecting work both in the litigation and fee phases. In addition, the Clerk of Court should tax $4558.40 contained in the plaintiffs' bill of costs to the defendant. Furthermore, additional costs totaling $3105.81 are appropriate and should be awarded to American Liberties Counsel.

                     s/Kevin F. McDonald
                     United States Magistrate Judge

February 23, 2012
Greenville, South Carolina